White-JD v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-178-CR

     JOSEFF DEON WHITE,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 339th District Court
Harris County, Texas
Trial Court # 605,534
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant was charged by indictment with the felony offense of capital murder, to which
Appellant pleaded not guilty. Trial was had to a jury which found Appellant guilty of the lesser-included offense of murder. 
      After the punishment hearing, the jury assessed Appellant's punishment at life in the Texas
Department of Criminal Justice, Institutional Division.
      Appellant comes to this court on two points of error as follows:
      (1) The trial court erred in denying Appellant's motion to suppress his confession pursuant
to article 15.17 of the Texas Code of Criminal Procedure.
      (2) The trial court erred in denying Appellant's first amended motion to suppress.
      Appellant has requested that both points of error be considered together in that the trial court
conducted a hearing upon each of Appellant's motions and the facts applicable thereto were
developed in one evidentiary hearing.
      A hearing was held outside the presence of the jury to determine the voluntariness of
Appellant's written confession pursuant to Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12
L.Ed.2d 908 (1964) and art. 38.22, § 6, Texas Code of Criminal Procedure.
      The victim of the homicide was a 77-year-old man who was murdered on July 23, 1991. The
State called as a witness Sergeant D.A. Ferguson of the Houston Police Department's Homicide
Division. After conducting an investigation into the matter, Sergeant Ferguson obtained an arrest
warrant for Appellant on Thursday, August 1, 1991, at about 11:30 a.m. Thereafter, at about
10:50 p.m. that same day, Appellant was arrested pursuant to said warrant. Once the police had
handcuffed Appellant and placed him in the police car, they advised him of his rights. Appellant's
only response was to tell the officers that he had not done anything. Appellant was then
transported to the police station where he arrived at approximately 12:15 a.m. on Friday, August
2, 1991. Appellant was taken to an interview room in the homicide division where he was again
advised of his rights by Sergeants Ferguson and Yanchak at about 1:00 a.m.
      Appellant responded to the police queries by saying that he had not bothered anyone and that
he did not know what the police were talking about. The police returned Appellant to the
municipal jail about 2:30 a.m.
      Twelve hours later, at approximately 2:20 p.m. on August 2, 1991, police checked Appellant
out of the jail and brought him back to the homicide division. Appellant told the officers that he
had spent some time during the night thinking and that he wanted to talk. The police immediately
again advised him of his rights, and Appellant proceeded to give the officers a running narrative
of the events surrounding the murder. In his statement, Appellant claimed to have been a
passenger in a rental car being driven by an acquaintance named "Blocker." Appellant also told
the police that he remained in the car while Blocker robbed and shot the victim. Police then began
reducing the statement to writing at about 2:50 p.m., and the same was completed about 3:45 p.m. 
Appellant's signing of the statement was witnessed at approximately 4:00 p.m.
      Immediately thereafter, the police asked Appellant if he could identify the automobile in which
he had allegedly been riding. Appellant then examined a book containing photographs of several
vehicles, and he subsequently identified the type of automobile which Blocker had been driving. 
At about 4:30 p.m. police next asked Appellant where the murder weapon was located, and he told
police that he had no idea. Police then advised appellant that they had spoken to numerous people
who claimed that shortly after the shooting, Appellant was bragging about robbing and shooting
an elderly man. At this point, Appellant looked down at the floor, paused for a couple of minutes,
and finally stated that he wanted to talk to an attorney; whereupon, the interview was immediately
terminated by the police.
      Appellant contends on appeal that since the police did not immediately take him before a
magistrate as required by article 15.17 of the Texas Code of Criminal Procedure, that his
statement should have been suppressed. It has long been established, however, that "absent a
showing of a causal connection between the failure to take an accused before a magistrate and the
accused's confession, the validity of a confession is not affected." Waller v. State, 648 S.W.2d
308, 311 (Tex. Crim. App. 1983). Moreover, our Court of Criminal Appeals has held "that a
violation of the requirement that a defendant be taken before a magistrate without delay will not
invalidate a confession which was voluntarily given after a defendant received his Miranda rights." 
Boyd v. State, 811 S.W.2d 105, 125 (Tex. Crim. App. 1991). See also Ex parte Stransberry, 702
S.W.2d 643 (Tex. Crim. App. 1986); Williams v. State, 692 S.W.2d 671 (Tex. Crim. App. 1984);
Wagner v. State, 687 S.W.2d 303 (Tex. Crim. App. 1984); Jackson v. State, (Tex. App.—Dallas
1987, no pet.) 726 S.W.2d 217.
      There is no evidence in this case that Appellant's confession was precipitated by a failure to
present him to a magistrate. Thus, because Appellant's confession was not causally related to
failure to present him before a magistrate, the confession was not invalidated on that ground. The
primary function of a magistrate's warning is to prevent the police from overriding a suspect's
will; that is to say, to prevent the police from obtaining an involuntary confession. In the case at
bar, Appellant was repeatedly admonished as to his rights by the police officers. Moreover, it is
abundantly clear that Appellant understood his rights. For example, once Appellant realized that
he had failed to fool the police with his story about a mysterious Jamaican named "Blocker," he
quickly invoked his Fifth Amendment right to counsel. 
      In addition, Appellant contends that he was denied equal protection of the law because
juveniles are afforded greater protection under the law than adults. Specifically, section 51.09 of
the Texas Family Code requires that the written confession of a juvenile reflect on its face that the
juvenile suspect was admonished by a magistrate.
      However, it is well established that absent an interference with the exercise of a fundamental
right or a burden on a suspect class, classification will not be set aside on equal protection grounds
if they are rationally related to a legitimate state interest. Clark v. State, 665 S.W.2d 476, 480,
481 (Tex. Crim. App. 1984). Juveniles are less likely to possess the stamina or resolve to
withstand an overbearing police interrogation. Therefore, the State has a legitimate interest in
providing greater protection for a juvenile offender than those afforded to adults.
      For the above reasons, we believe Appellant's contentions to be without merit, and we
accordingly overrule them and affirm the trial court's judgment.
 
                                                                                     JOHN A. JAMES, JR.
                                                                                     Justice (Retired)

Before Justice Cummings,
      Justice Vance, and
      Justice James (Retired)
Affirmed
Opinion delivered and filed March 10, 1993
Do not publish